**Not for Publication**   **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESTER ALFORD, | : |
| Petitioner, | : Civil Case No. 06-1294 (FSH) |
| v. | : **AMENDED** |
| | : **OPINION and ORDER** |
| ALFARO ORTIZ, | : |
| and ZULIMA V. FARBER | : Date: May 14, 2008 |
| Respondents. | : |

**HOCHBERG, District Judge**

Lester Alford brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I. Background**

After a jury trial in the Superior Court of New Jersey, Law Division, Lester Alford was convicted of murder, second-degree possession of a firearm for an unlawful purpose, and third-degree possession of a firearm. The judgment of conviction was entered on January 12, 1996. Alford was sentenced to 50 years, with a 30 year period of parole ineligibility. On March 5, 1999, Alford directly appealed his conviction to the Appellate Division of the New Jersey Superior Court, which affirmed his conviction and sentences. The Supreme Court of New Jersey denied Alford's petition for certification. On November 8, 1999, Alford filed his first petition for post-conviction relief pursuant to N.J.Ct.R. 3:22-1, *et seq.*, in the Superior Court of New Jersey, Law Division, which denied his petition. The Appellate Division affirmed, and the New Jersey Supreme Court denied certification. In October 2003, Alford filed a second petition for post-conviction relief in Superior Court, which struck eight of his claims as time-barred and denied

the remaining claim. Alford's counsel failed to notify him that the second petition had been denied and failed to file a notice of appeal. Alford's *nunc pro tunc* motion was granted by the Appellate Division in or about March 2004. After consultation with new counsel retained during the pendency of the appeal, Alford decided to abandon the appeal and filed the current petition before the Court. The appeal was dismissed on November 15, 2005. Alford timely brings this petition for writ of habeas corpus under 28 U.S.C. § 2254.

## II. Standard of Review

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Section 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets the standard for granting or denying a writ of habeas corpus to a state prisoner:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, the Supreme Court provided guidance on the two clauses of Section 2254(d)(1). 529 U.S. 362, 412-13 (2000). Under the "contrary to" clause, a federal court

may grant the writ "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id.  Under the "unreasonable application" clause, a federal court may grant the writ "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  An "unreasonable application" of federal law is different from an incorrect application of federal law, and a finding of incorrect application alone will not be sufficient. Id. at 410.  That application must also be unreasonable. Id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

Federal courts must grant proper deference to the decisions of the state courts. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  Also, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1).  This presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).

### III.     Discussion

Alford raises two arguments in this habeas petition, both related to his right to a jury trial. The first argument asserts that the trial judge improperly retained a juror who should have been dismissed.  The second argument asserts that the trial judge improperly dismissed a juror who should have been retained.  The New Jersey Appellate Division considered and rejected both of these claims, finding that the trial judge's reasoning was fully supported by the record and was a reasonable handling of the jury issues.  For the reasons given below, the Court finds that the Appellate Division's ruling was not contrary to clearly established federal law, was not an

unreasonable application of law to facts, and that the presumption of the correctness of the factual findings has not been overcome by clear and convincing evidence.

*A.     Failure to Remove Juror*

Alford claims that the trial court's failure to remove a juror who had been approached by a family member of the victim and its failure to *voir dire* the entire panel about the contact deprived Alford of a fair and impartial jury under the Sixth Amendment of the federal constitution and thus was an unreasonable application of clearly established federal law.

The Sixth Amendment right to a jury trial "guarantees to the criminal accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). In this context, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217 (1982). However, due process does not require a new trial whenever a potentially compromising situation arises because "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Id.

On the fourth day of trial, defense counsel informed the court that Alford was concerned that Juror No. Ten, Ms. Hammonds, knew a relative of the victim. (7T3.) The trial court conducted a *voir dire* of Juror Hammonds. Hammonds admitted that a young woman, who had dressed her hair on one occasion at her sister's house, approached her in the ladies room of the courthouse on the first day of jury selection. (7T6-7T8.) Though the woman did not identify herself, Hammonds recognized her face. (7T7.) The woman told Hammonds: "that guy's accused of shooting my sister-in-law's son." (7T8.) Hammonds told the woman she could not

4

talk about the matter.  (7T7.)  There was no other conversation between the women, and Hammonds left the ladies room.  (7T8.)  Hammonds assured the court that her contact with the woman would not affect her ability to be fair and impartial.  (7T10.)

After *voir dire*, the trial court found that Juror Hammonds was truthful, and defense counsel assumed that Hammonds was being candid.  (7T11, 7T13.)  Defense counsel expressed concern over future contact between members of the victim's family and Hammonds and requested that Hammonds be excused.  (7T11-7T13.)  In view of defense counsel's concerns, the court admonished Hammonds not to speak to anyone about the case, to report any future attempts at contact, and not to discuss the contact with the other jurors.  (7T13-7T21.)  Also, upon the Government's request, the court confirmed with Hammonds that the contact occurred on the first day of jury selection before the court gave the preliminary jury instruction that, if anyone attempted to speak to a juror about the case or influence the juror's decision, the juror should report that contact to the court.  (7T15.)  Hammonds was retained as a juror.

In a criminal case, any unapproved private communication or contact with a juror about a matter pending before the jury is presumptively prejudicial.  Remmer v. United States, 347 U.S. 227, 229 (1954); United States v. Console, 13 F.3d 641, 666 (3d Cir. 1993).  The Government has the burden of demonstrating that the "improper communication did not and will not prejudice the defendant."  United States v. Vega, 285 F.3d 256, 266 (3d Cir. 2002).  The trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it is prejudicial, in a hearing with all interested parties permitted to participate."  Remmer, 347 U.S. at 229; see also Vega, 285 F.3d at 266 (3d Cir. 2002) (citing Waldorf v. Shuta, 3 F.3d 705, 709 (3d Cir. 1993); Console, 13 F.3d at 666) (internal citation omitted) (the trial court "must conduct a

*voir dire* of all jurors with whom the improper communication occurred that is sufficiently tailored to probe adequately the possibility of prejudice.")).  The method of conducting the *voir dire* is left to the sound discretion of the trial court.  Waldorf, 3 F.3d at 710.  Because *voir dire* determinations "rely largely on . . . immediate perceptions," trial courts are given ample discretion in determining how best to conduct *voir dire*.  Id. (quoting Rosales-Lopez v. United States, 451 U.S. 182, 189 (1991)).  Nevertheless, the *voir dire* must not be "so general that it does not adequately probe the possibility of prejudice."  Id.

   The trial court conducted *voir dire* of the only juror with whom the improper contact occurred: Juror Number 10, Ms. Hammonds.  There is no indication in the trial transcript that the family member contacted any other jurors.  Ms. Hammonds testified that she did not discuss the contact with any member of the jury.  Moreover, the communication did not address the guilt or innocence of the defendant, see United States v. Boscia, 573 F.2d 827, 830 (3d Cir. 1978), but rather the accusation.  The family member stated "that's guy's accused of shooting my sister-in-law's son," which is merely a statement of the fact that Alford was the defendant charged with murder.  For the courts of the state to determine, after inquiry, that the statement was not an emotional appeal or a statement that would influence a juror to return a certain verdict is neither contrary to law nor an unreasonable application of clearly established federal law nor an unreasonable determination of the facts in light of the evidence in the proceeding.

   Alford argues that the trial court's questioning of Ms. Hammonds inadequately probed the possibility of prejudice.  First, he contends that the court allegedly failed to probe the reason for Ms. Hammonds's initial denial that she knew anyone in the victim's family and that she had spoken to someone about the case.  However, the court did confirm with Ms. Hammonds that the

contact occurred before the court gave the preliminary jury instruction on reporting third-party contacts. Despite Alford's contention that Ms. Hammonds was reluctant to reveal the encounter, it occurred before she was aware that she had an obligation to report it.

Second, the defendant contends that the court failed to ascertain how well-acquainted Ms. Hammonds was with the victim's family member. However, Ms. Hammonds testified that the family member did her hair "on one occasion." Indeed, defense counsel only expressed concern over future contact between the women and assumed that Ms. Hammonds was being candid. (7T11-12.) The court noted that Ms. Hammonds did not "even know the person's name." (7T11.) The trial court is given ample discretion in determining how best to conduct *voir dire* because such determinations rely on immediate perceptions. Waldorf, 3 F.3d at 710. Given the trial court's finding that the relationship was superficial, the impact of that relationship was naturally insignificant. The Appellate Division reasonably deferred to the trial court's determination that Ms. Hammonds's testimony was credible.

Alford argues that the trial court's *voir dire* relied heavily on Ms. Hammonds's subjective assessment of her ability to be impartial and should have considered circumstantial evidence. Where there is a substantial possibility of prejudice, "the *voir dire* must not simply call for the jurors' subjective assessment of impartiality." Waldorf, 3 F.3d at 710; Vega, 285 F.3d at 266-67. This Court finds that the state courts' finding that there was circumstantial evidence showing a lack of prejudicial effect in the timing of the contact was not an unreasonable determination of facts. Where a juror is exposed to allegedly prejudicial information at the outset of trial, it is far more remote or attenuated temporally and thus far less likely "that the allegedly prejudicial information could have an impact on the verdict." Console, 13 F.3d at 668 (quoting United

States v. Gilsenan, 949 F.2d 90, 96 (3d Cir. 1991)).  The contact with the family member occurred before the trial even began, on the first day of jury selection.  This circumstance, in addition to Ms. Hammonds's testimony, helps demonstrate a lack of prejudicial effect, and the state court's finding is reasonable and a proper application of law to facts.

Finally, Alford alleges that Ms. Hammonds's relationship with the family member constituted juror bias, which would have been grounds for removal at jury selection had it been known at that time.  Juror bias is established by showing (1) that the juror "failed to answer honestly a material question on *voir dire*" and (2) that "a correct response [to the question] would have provided a basis for a challenge for cause."  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).  The New Jersey Appellate Division found that "[t]he trial judge's findings are fully supported by the record; credibility is a matter within his exclusive domain.  We are satisfied the refusal to remove Ms. Hammon[d]s was a matter of sound judgment."  This finding is not contrary to any clearly established Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

B.     *Removal of Juror*

Alford claims that the trial court should not have dismissed a juror solely because the juror's race and city of residence matched the unsworn hearsay allegations of a jailhouse informant who reported that a "black woman from Plainfield" on the jury in the case had been bribed.  The informant was an inmate in the same jail as Alford.

In an *in camera* proceeding, Detective Marcantonio reported to the trial court what the informant had told him.  In essence, the informant had overheard Alford and another inmate,

Burns, planning to bribe a juror for $1,500.  Allegedly, Alford told Burns that the payments would be made in installments: $500 up front; $500 toward the middle of trial; and $500 at the end of trial, for a not guilty verdict.  (10T5.)  Alford said the first $500 had been paid.  (Id.)  The informant advised Detective Marcantonio that Burns was in cell number seven on the "R" tier.  (Id.)  Records at the Union County Jail revealed one Bruce Burns was located there.  (10T6.)  The inmate refused to give a sworn statement because he had heard another inmate had been badly beaten after he gave a statement to the Prosecutor's Office.  (10T9.)

      The court heard argument on the question whether to *voir dire* the juror or simply excuse her.  (10T10.)  The prosecutor recommended simply excusing the juror because her answers could possibly incriminate her and because it would be difficult to question the juror generally about the matter.  (10T10-11.)  Defense counsel objected to excusing the juror without questioning, stressing that the information received was the unsubstantiated allegations of an informant who was "perhaps hoping to curry favor with the prosecutor."  (10T11-12.)

      The court found validity in the inmate's statement because there was "one black woman from Plainfield on the jury, that being juror number 12."  (10T12.)  However, the court found that conducting a searching *voir dire* would be problematic whether the juror accepted the bribe or not.  (1012-13.)  If the juror had not accepted the bribe, *voir dire* would alert her that someone had accused her of accepting a bribe and such knowledge "would undoubtedly prejudice her against the defendant and would result in him not getting a fair trial."  (10T13.)  If the juror had accepted the bribe, she would be inclined not to admit doing so in fear of exposing herself to criminal prosecution.  (Id.)

The trial court excused the juror without explaining the reason and then addressed the remaining members of the jury. (10T17-18.) The court instructed the members not to speculate as to the reason for the juror's departure and not to allow her departure to enter into their deliberations or affect the verdict. (10T18.) The court questioned the jurors whether the excused juror had said anything to them that would affect their ability to be completely fair and impartial, and all of the jurors indicated that the excused juror had not done so. (10T18-19.)

Alford argues that when the prosecutor seeks exclusion of a juror because of bias, the prosecutor must demonstrate through questioning that the juror lacks impartiality. However, in support of this proposition, Alford relies on a number of cases that all concern the exclusion of *potential* jurors through a challenge for cause. See, e.g., Wainwright v. Witt, 469 U.S. 412 (1985). Here, the juror was already impaneled. The purpose of questioning a potential juror in those cases is to develop a record that will justify the exclusion of the potential juror. See Szuchon v. Lehman, 273 F.3d 299, 328 (3d Cir. 2001). The record that justified the exclusion of the juror in this case was established through the *in camera* hearing the court held. Alford also relies on United States v. Salamone, 800 F.2d 1216, 1229 (3d Cir. 1986) for the proposition that a defendant is entitled under the Sixth Amendment to a jury from which no one "has been summarily excluded without regard to their ability to serve as jurors in the case." However, Salamone concerned the exclusion of an entire group of potential jurors (members of the NRA) because of their affiliation with the group. The trial court did not exclude the juror because of her affiliation with any group; the exclusion was based on the juror's alleged taking of a bribe.

In the context of jury tampering, such as an allegation of juror bribery, Remmer applies. 347 U.S. at 229. The trial court "should determine the circumstances, the impact thereof upon the

juror, and whether or not it is prejudicial, in a hearing with all interested parties permitted to participate." Id. The method of conducting the *voir dire* is left to the sound discretion of the trial court. Waldorf, 3 F.3d at 710; see also Boscia, 573 F.2d at 831 ("That the trial judge has some discretion in determining the nature and extent of the hearing has been expressly recognized.")

The trial court conducted an *in camera* hearing where it questioned Detective Marcantonio as to what inmate Motley had told him, heard argument by both the prosecutor and defense counsel whether to *voir dire* the juror accused of bribery, and made a considered decision on the matter. The court recognized that the case was problematic whether the juror accepted a bribe or not. *Voir dire* might have either prejudiced the juror against Alford or failed to elicit the truth. The hearing conducted by the trial court was consistent with the requirements of Remmer, and the court correctly excused the juror without *voir dire*.

Despite Alford's contention that the court relied upon uncorroborated hearsay, Alford has not cited any cases where such evidence is inadequate to support excusing a juror accused of bribery. Whether the testimony was corroborated or not, the concerns of the trial court would have remained the same. As the court stated: "It seems to me that even planting in the juror's mind that somebody is trying to fix this case might well so prejudice her against the defendant that he will not receive a fair trial." (10T13.) Thus, the mere allegation of the juror's misconduct could have prejudiced her against Alford. The trial court's reasoning is neither contrary to law nor an unreasonable application of clearly established federal law nor an unreasonable determination of the facts in light of the evidence in the proceeding.

Finally, Alford claims that the exclusion of the juror, a black woman, violated the Equal Protection Clause of the Fourteenth Amendment of the federal constitution under Batson v.

11

Kentucky, 476 U.S. 79, 84 (1986).  A Batson challenge, however, occurs in the context of jury selection, and typically such challenges must be made before the jury has been sworn.  Ford v. Georgia, 498 U.S. 411 (1991).

The New Jersey Appellate Division found that "the course the trial judge took was the correct and reasonable one, fully justified by his reasons, and incapable of adversely affecting the fairness of defendant's trial."  This finding is not contrary to any clearly established Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**IV.     Conclusion**

For the aforementioned reasons, Alford's petition for writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**ACCORDINGLY IT IS** on this 14th day of May, 2008,

**ORDERED** that because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by Section 102 of the AEDPA, 28 U.S.C. §2253(c), a Certificate of Appealability should **NOT** issue; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J